# R. B. NORWOOD v. THE STATE.

No. 19435.   Delivered February 23, 1938.
Rehearing denied November 2, 1938.

The opinion states the case.

*Dayton Moses,* of Fort Worth, and *F. H. Hammond,* of Burnet, for appellant.

*Carlos C. Ashley,* District Attorney, of Llano, *Weaver H. Baker,* of Junction, *Henry Crawford, Harry Johnson,* and *Ben King,* all of Burnet, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.——Appellant was convicted of the offense of murder and his punishment was assessed at confinement in the State Penitentiary for a term of twenty-five years.

The record shows that a day or two prior to the date of the homicide, the appellant made a complaint against Calvin Word, Sr., and Cal. Word, Jr., for stealing his goats and swore to an affidavit for a search warrant. On the morning preceding the afternoon of the day of the homicide, the sheriff and his deputy went to the ranch of Cal. Word, Jr., to make a search for the allegedly stolen goats. Soon after the sheriff had arrived at the ranch, appellant and three of his friends appeared, each carrying guns of some kind. At the request of young Word, the sheriff took charge of the guns but when they started to leave, he returned the guns to their respective owners.

During the time that appellant was on the ranch, he remarked to the deceased that he wanted the affair to terminate peaceably. Deceased replied: "It does not look like it, you coming down here with all those guns." Orville Word, an uncle of the deceased, remarked: "A man with the reputation you have—I would carry a gun too. If it was me, I wouldn't let a thieving s— of a b——— have anything to do with my business." When appellant was leaving the ranch, he inquired of Orville Word if he still meant what he said. Orville replied: "You can take it as you like." Thereupon appellant said: "That is all I want to know," or "I will see you later." The testimony is indefinite as to the exact language appellant used.

It further appears that before appellant and his companions left the ranch, he made an agreement with Andrew and Austin Kinser to meet them at the Jackson Gate at two P. M. to search another pasture of the deceased. Instead of keeping his appointment, he went to the town of Burnet. The deceased and his uncle, Orville Word, had gone to Burnet and parked their car in front of the post office; cars were parked on either side of them. Appellant, who was standing on the sidewalk near the post office, went to his own car, and drove it up behind the deceased's, thus preventing him from backing out. After he had parked his car as stated, appellant got out and called to Orville Word: "Come over here, Mr. Word; I want to see you a minute." At the same time, he reached into his car for a rifle. The deceased spoke to his uncle and warned him not to get out as the appellant had a gun and would kill him. The elder Word got out, however, and started to leave. Some one in the street cautioned him not to run or move, but having sensed the real danger, he hurriedly left. He had gotten only a short distance from the car when he heard a gun fire. He immediately returned to the car, along with others. They found the deceased lying on the left hand side of his car with a Winchester leaning either on the running board or against the left rear fender of his car, the stock resting on the ground and the barrel pointing upward.

Appellant's first contention is that the court erred in admitting the testimony of the sheriff and other witnesses as to what occurred at the ranch a few hours prior to the homicide, on the ground that it showed an extraneous offense. We think this testimony was admissible to show motive, intent and malice. Antecedent quarrels, assaults, and former grudges between the parties are admissible to show the state of mind of the accused and to establish a motive for the homicide. See Guerrero v. State, 171 S. W. 731; Coffman v. State, 165 S. W. 939.

Moreover, under Article 1257a, P. C., all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances tending to show the condition of the accused's mind at the time of the homicide, are admissible and may be considered by the jury in determining the punishment to be assessed.

Under the foregoing facts, the court charged the jury on the doctrine of provoking a difficulty. Appellant objected to such charge on the following grounds: (1) The evidence does not raise the issue and therefore does not justify such an instruction; (2) under said instruction, the jury was authorized to convict without a finding that there was a previously formed design on the part of the defendant to kill the deceased; (3) because the converse of the doctrine of provoking a difficulty is not given in plain and intelligent language, and (4) because the charge does not inform the jury that unless they believed, beyond a reasonable doubt, that the defendant deliberately and intentionally did some act, made some demonstration or gesture, used some language, either all or each, with the specific intention of killing or inflicting serious bodily injury upon the deceased, they should find him not guilty, etc.

The charge of the court is, in part, as follows: "You are further instructed as part of the law of this case, and as a qualification of the law of self-defense, that, if you find and believe from the evidence, beyond a reasonable doubt, that the defendant, R. B. Norwood, immediately before the difficulty then and there did some act, or used some language, or did both, as the case may be, with the intent on his, the defendant's, part to produce the occasion for killing the deceased, Calvin Word, Jr., and to bring on the difficulty with the said Calvin Word, Jr., and that such conduct on defendant's part, if there was such, was reasonably calculated to, and did, provoke a difficulty, and that on such account the said Calvin Word, Jr., attacked defendant, or reasonably appeared to defendant to attack him, or to be about to attack him, and that the defendant then killed the said Calvin Word, Jr., in pursuance of his original design, if you find there was such, or if the defendant provoked the difficulty that resulted in the death of the deceased, and by his own wrongful act, if any, produced a necessity for taking the life of the deceased, then you will find the defendant guilty of murder and assess his punishment as heretofore stated in this charge. On the other hand, if you find that the acts done, or language used by defendant, if any, was

not under the circumstances reasonably calculated or intended to provoke a difficulty, or an attack by deceased upon defendant, or if you have a reasonable doubt thereof, then in such event, defendant's right of self-defense would in no wise be abridged, impaired or lessened, and if you so find, or if you have a reasonable doubt thereof, you will decide the issue of self-defense in accordance with the law on that subject given in other portions of this charge, wholly disregarding and without reference to the law on the subject of provoking the difficulty."

We find ourselves unable to agree with him that the issue of provoking the difficulty was not raised by the testimony. There was an unfriendly state of feeling existing between the parties. This seems to have been intensified by what occurred at the ranch a few hours prior to the commission of the homicide. At the time that deceased and his uncle, Orville Word, parked their car in front of the post office in the town of Burnet, appellant was standing on the sidewalk a short distance to the east of where they were parked. His car, with a rifle therein, was parked still further east and down the street. He immediately went to his car and drove it up behind the car of the deceased so that they could not back out. Appellant then got out of his car on the opposite side, reached for his gun and asked Orville to come to him; that he wanted to see him. Deceased, who saw that his car was blocked and saw appellant's movements, his attitude, and knowing the state of feeling existing, immediately warned his uncle not to comply with appellant's request, because appellant had a gun and would kill him. It seems from the foregoing statement that the deceased had seen appellant with the gun, noticed his movements, and no doubt made an effort to get his gun to protect himself and his uncle from what appeared to be an attack upon them by appellant.

It occurs to us that such is the reasonable and logical conclusion to be drawn from the evidence. Consequently, the issue of provoking a difficulty was raised. If the appellant, by his own act or conduct, did something with the intention of provoking a difficulty and it was reasonably calculated to provoke the deceased to make an attack upon the appellant which he, appellant, might use as a pretext for the killing of the deceased, then he forfeited his right of self-defense. What his intentions were was concealed within his own mind and can only be determined from his words, acts, and conduct. If they were such as would reasonably lead a dispassionate mind to

the conclusion that he intended to provoke a difficulty for the purpose of killing the deceased, then the testimony was sufficient to submit the issue to the jury for their determination. In every case where the acts and conduct of the accused were the cause of an attack upon him, the question of whether they were reasonably calculated to provoke the difficulty are questions of fact for the determination of the jury under appropriate instructions from the court. See 22 Tex. Jur., p. 499; Bennett v. State, 252 S. W. 790; Criddington v. State, 78 S. W. (2d) 185; Hollman v. State, 223 S. W. 206; Keeton v. State, 59 Texas Crim. Rep. 316.

Ordinarily in determining whether there be evidence calling for a charge on provoking the difficulty, the trial court will not be required to go beyond the State's evidence, though in some cases this might not be true; but if there be such evidence, it would be the duty of the court to submit the law of such issue even though the trial court might believe the evidence on the part of the accused to rebut the theory of provoking the difficulty. The determination of whether the issue be sustained or rebutted would be for the jury. See Crowley v. State, 35 S. W. (2d) 437; Garner v. State, 99 Texas Crim. Rep. 618.

Appellant takes the position that the issue as to who started the controversy was controverted. We find no such evidence in the record. Appellant's own witness, E. D. Anderson, testified as follows: "We [meaning the appellant, the witness, and the son of the witness] were standing with our backs to the wall facing out toward the street when the Word boy and his uncle drove up and parked their car and the boy [meaning the deceased] got out and walked into the post office. The boy did not make any demonstration or say anything calculated to offend anybody. I did not notice him doing anything like that. Mr. Orville Word did not do anything like that. As far as I know he [meaning the deceased] had not done a thing at the time Norwood drove up and stopped his car behind the Word car." (Parentheses ours.)

The second and third objections addressed to said paragraph of the charge, falls far short of complying with Article 658, C. C. P., requiring the defendant or his counsel to specifically and distinctly point out the error complained of.

The fourth objection seems to us to be without merit. The court did charge the jury that if they should believe from the evidence, beyond a reasonable doubt, that the defendant, R. B. Norwood, immediately before the difficulty then and there did

some act or used some language, or did both, as the case may be, with the intent on his, the defendant's, part to produce the occasion for killing the deceased, and to bring on the difficulty with said deceased, and that such conduct on defendant's part, if there was such, was reasonably calculated to, and did provoke a difficulty, and that by reason thereof deceased attacked defendant or reasonably appeared to defendant to attack him, or to be about to attack him, and that the defendant then killed the deceased in pursuance of his original design, and by his own wrongful act, if any, produced the necessity for taking the life of the deceased, then you will find the defendant guilty of murder, etc.

It occurs to us that the court required the jury to find beyond a reasonable doubt: (1) That the defendant did some act or used some language with the intent to produce the occasion for killing the deceased, and (2) what he did do was calculated to produce the occasion with the intent of killing the deceased. Hence, the charge is not subject to the criticisms addressed thereto.

By bill of exception number six, appellant complains of the action of the court in permitting the district attorney to prove by Hugh Barnett, the sheriff of Burnet County, on cross-examination that the complaints which had been made by the appellant against the deceased, Cal. Word, Jr., and his father, Cal. Word, Sr., and which had been introduced in evidence by appellant, had been dismissed. Appellant objected on the ground that it was an act of a third party, was done out of the presence and hearing of the defendant, was not binding on him, and was highly prejudicial to his defense.

Appellant offered in evidence the complaints which he had made against the deceased and his father charging them with theft. The purpose for which they were offered is not made to appear, and we fail to see what bearing they could have on his theory of self-defense, unless he sought to impress upon the jury the fact that deceased was a thief and ought to have been killed anyway. It is our opinion that under the holding of this Court in the case of Railey v. State, 58 Texas Crim. Rep. 1 (16), no reversible error is shown.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has

been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—It is again insisted by appellant that the evidence failed to raise the issue of provoking the difficulty, and hence the trial court erred in charging on that issue.

The contention naturally brings in review the entire evidence touching the issue mentioned. It was uncontroverted that appellant had filed a complaint against Cal. Word, Sr., and Cal. Word, Jr., charging them with theft of goats from him. He had procured a search warrant and the sheriff went to Word's ranch to search for the alleged stolen goats. The evidence warranted the jury in finding the following facts. Appellant and three companions appeared on the scene. Observing that they were armed Cal. Word, Jr., inquired of the sheriff if he had deputized the parties, and upon being informed that he had not young Word requested the sheriff to take charge of the firearms while they were on his premises. One of appellant's companions was reluctant to surrender his gun, saying that appellant had told him to keep it. During the controversy Cal. Word, Jr., went to the house and got his gun. Finally the sheriff took possession of all the guns, including that of Cal. Word, Jr. After an examination of the goats failed to result in finding any of Norwood's among them, Norwood said he wanted the "affair" to be peaceable, to which Cal. Word, Jr., replied: "It doesn't look like it, you coming down here with all those guns." Orville Word, an uncle of Cal. Word, Jr., at this point said, "A man with the reputation you have got, the s— of a b——, I would carry my gun, too." Norwood asked Orville if he intended to call him a s— of a b——, and Orville told him to "take it as he liked." The sheriff interposed here and stopped what appeared to be a threatened encounter. As Norwood and his companions were leaving Norwood again asked Orville Word about the remark the latter had made, and upon again being told to "take it as he liked," he told Orville Word "he would see him later," or "we will meet again." The transaction heretofore mentioned occurred sometime during the forenoon. About one o'clock the same day Cal. Word, Jr., and Orville Word went to the town of Burnet. Cal. Word, Jr., parked his car in front of the post office and went to get his mail, leaving Orville in the car. Appellant's car was parked near by. While Cal. Word, Jr., was in the post office appellant went to his car,

backed it out from the curb and drove it immediately behind the Word car. When Cal. Word, Jr., came from the post office with his mail and approached his car he evidently saw appellant as he at once said to Orville, "He has got us blocked and we can't get out." Orville looked back and saw appellant, who motioned to Orville and said, "Come around here, Mr. Word, I want to talk to you." Appellant, who was on the ground beside his car, reached in the car and took hold of his gun. Cal. Word, Jr., said to his uncle, "Don't go, Uncle Orville, don't you go, he has got a gun and he will shoot you." Cal. Word, Jr., then made an effort to get his gun out of his car. Appellant shot him and Cal. Word, Jr.'s, gun fell on the ground, or on the running board of the car.

It is not intended by the foregoing recitals to convey the idea that it is a finding of this Court that the transaction occurred as stated, but to announce that there was evidence in the case which would support a finding by the jury that it did so occur. (*a*) Did the things which appellant said and did cause Cal. Word, Jr., to reach for his own gun? Surely the jury had evidence upon which to base such a finding. (*b*) Were the things which the jury may have found that appellant said and did calculated to cause Cal. Word, Jr., to reach for his own gun? What occurred at the time of the killing and the significance attached thereto must be viewed in the light of what had happened at the Word ranch a few hours earlier. That appellant's act in stopping his car immediately behind the Word car caused Cal. Word, Jr., to think the act was intentional and done to prevent him from moving his car is evidenced by what he said to his uncle. That appellant's request to Orville Word to "come here, I want to talk to you," in connection with appellant's movement to get his gun out of the car caused Cal. Word, Jr., to believe that his uncle was in danger of being killed by appellant is evidenced by the warning to his uncle not to go. In view of what was then occurring, colored by the events of the morning, prevents us from holding as a matter of law that appellant's conduct and words were not calculated to cause Cal. Word, Jr., to get his own gun in anticipation of an effort on appellant's part to kill either his uncle or himself. This leaves only one other element to be considered on the question of provoking the difficulty, viz.: (*c*) Were the acts and language of appellant done and said with the intent on his part to provoke an attack which would give him the apparent excuse to kill? Necessarily, the question of intent must be solved by the jury from all the facts before them. We can not say the jury was

without evidence upon which to predicate a finding upon this issue against appellant.

The indictment against appellant was returned at a special term of the district court of Burnet County, which was convened on October 12, 1936, pursuant to the following order:

"Special Term of District Court.

"The State of Texas, County of Burnet.

"In the District Court of Burnet County, Texas, Special October Term, A. D. 1936, October 12, 1936.

"Whereas, it has been reported to me that two (2) separate killings have occurred in Burnet County, Texas, since the adjournment of the last regular term of the District Court in and for said County, and that the interests of justice would be more efficiently served by the empanelling of a grand jury forthwith for the investigation of such crimes as well as for all other crimes now pending which to such Grand Jury may seem necessary: Now, Therefore, I, Lamar Thaxton, Judge of the 33d Judicial District of Texas, of which said Burnet County is a part, deem it advisable and necessary that a special Term of the District Court in and for Burnet County, Texas, be convened for the aforesaid purposes and for the transaction of such other business and trial without jury of such cases as may properly arise. It is; therefore, ordered that a special term of the District Court of Burnet County, Texas, be now convened for the purposes aforesaid at the courthouse, same being the District Court room on the second floor of the J. H. Stapp Building (the lower floor now occupied by Neumann's Store), in Burnet, Texas, on this the 12th day of October, A. D. 1936, at 8:00 o'clock A. M., to continue in session so long as to the Judge of this court may deem necessary.

"Lamar Thaxton,
"Judge of the 33d Judicial District of Texas,
of which Burnet County is a part."

By a supplemental motion for rehearing appellant now urges that the foregoing order was void and did not validly convene a special term of the district court because it failed to fix any definite adjourning date; that for the same reason the order appointing jury commissioners to draw a grand jury for said special term was void, and likewise, the indictment herein was wholly void because it was returned by a grand jury selected under a void order at a void special term.

Jury commissioners were appointed, a grand jury selected, and the indictment against appellant returned into court on the

16th day of October, 1936, and said special term was actually adjourned on said 16th day of October.

Appellant relies particularly on the holding of the Supreme Court in Hamilton, et al., v. Empire Gas and Fuel Co., 110 S. W. (2d) 361. The court was there dealing with an order "extending" a term of court and not with an order calling a special term of court. To our minds a very clear distinction may be drawn, and therefore, we are not called upon to express agreement or disagreement with the holding in said case. In passing, we note that from the opinion in said cause it does not appear when, if ever, the "extended" term was adjourned; whereas, in the case before us the "special term" is shown to have been adjourned on the fourth day after convening.

Article 1920, R. C. S. (Acts 1905, p. 116), regarding special terms of court, reads as follows: "Whenever a district judge deems it advisable to hold a special term of the district court in any county in his district, such special term may be held; and such judge may convene such term at any time which may be fixed by him. Such district judge may appoint jury commissioners, who may select and draw grand and petit jurors in accordance with the law. Such jurors may be summoned to appear before such district court at such time as may be designated by the judge thereof. In the discretion of the district judge, a grand jury need not be drawn or empaneled. No new civil cases can be brought to a special term of the district court."

Article 1923, R. C. S. (Acts 1909, p. 114), provides as follows: "Whenever a district court shall be in the midst of the trial of a cause when the time for the expiration of the term of said court arrives, the judge presiding shall have the power and may, if he deems it expedient, extend the term of said court until the conclusion of such pending trial. The extension of such term shall be shown in the minutes of the court before they are signed. *If the term is extended as herein provided, no term of court in any other county shall fail because thereof, but the term of court therein may be opened and held as provided by law when the district judge fails to appear at the opening of a term of court.*"

Article 1924, R. C. S. (Acts 1923, p. 25), reads as follows: "A district court in a judicial district composed of more than one county and having terms of court fixed by law in counties in which there is a city of one hundred and thirty-five thousand population, or over, according to the preceding Federal census,

may, by an order of the judge thereof made and entered of record in the minutes of said court, have any of such terms of court in such last described counties extended for such length of time as such judge may deem advisable for the transaction of the business of such court."

Article 1925, R. C. S. (Acts 1923, p. 25), reads: "If any term of court is *extended* as provided in the preceding article, *no term of such court as fixed by law shall fail, but same shall be* opened and held as provided by law. When a new term shall run concurrently in time and in the same county with an extended term the minutes of both such terms may be recorded together during the time such terms so run concurrently. While such new term is open, each entry made in the minute records of said court, during such time shall be presumed to be the minutes of proceedings of such new term unless otherwise shown in such minutes."

Article 200a, Section 6, R. C. S. (Acts 1927, 40th Leg., p. 230, Chap. 156), in part provided: "It shall be the duty of any district judge of any district within the Administrative District to *extend the regular terms* of his court, *and to call special terms,* when necessary to carry out the purposes of this Act and dispose of pending litigation. *If the term be extended as herein provided no other term of the court in such district shall fail because of said extension,* but such other terms may be opened and held as usual."

This Court has had occasion to deal with orders for special terms of court in a number of cases, but in none of them was the exact question here presented involved, and most of them were under statutory enactments very different from those now in force, hence the opinions in said cases are of no practical value in the present controversy.

From the language employed in the acts of the Legislature heretofore quoted, and italicized by us, it seems clear that the Legislature had in mind the fact that the "extension" of a term of court might and usually did overlap the convening date of a regular term, and hence specifically provided that such "extended" term should not operate to cause a failure of such regular term, whereas no such contingency was contemplated where a "special term" was convened, the reason evidently being that no necessity existed for a special term if the regular term for such county was in session. It is true that a necessity might arise for the extension of a special term to conclude the trial of a cause, and such extension might overlap the convening

date of a regular term, but then it would be necessary to deal with an "extension" order under the statutes quoted, which point is not here present. We are inclined to the view that where an order for a special term of court for a county is made and no adjourning date is fixed, but it does not appear clearly from the order itself that said special term was intended to overlap a regular term, that said special term would terminate by operation of law when the time for convening the regular term in said county arrived. This being our view, we hold against appellant's contention that the special term was void because no adjourning date was fixed in the order calling such special term, and against his contention that the indictment against appellant was likewise void.

Appellant's motion for rehearing is overruled.