Bill Hugh ERVIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 35634.

Court of Criminal Appeals of Texas.

April 17, 1963.

Rehearing Denied May 29, 1963.

Hill D. Hudson, Pecos, for appellant.

Edwin F. Berliner, Dist. Atty., Sam W. Callan, Asst. Dist. Atty., El Paso, and Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Judge.

The offense is murder with malice; the punishment, ten years.

The evidence reflects that the appellant and Sam Keener, the deceased, were partners in an auto garage in Van Horn, Texas. The agreement between the two called for the appellant to furnish the building and some of the tools and the utilities, Keener was to do the work, and the profits were to be equally divided each day. There was some difficulty between the two as to this daily distribution, and the relationship appears to have been far from amicable. Keener and his wife had already decided to leave town and were in the process of packing and closing their affairs at the time of the homicide.

On the Saturday preceding the homicide, Keener and his wife, Ann, had been to a movie. Upon returning, they found the appellant at the garage, with the doors open and the outside lights on. These lights could only be turned on from the Keener apartment behind the garage. Ann Keener testified that entry had been gained by forcing the rear door of the apartment. [The appellant admitted the entry but contended that it had been gained through a window.]

When Sam Keener discovered this, he confronted the appellant, and a fight ensued. It is undisputed that deceased procured a rifle and threatened the appellant's life at that time.

Ann Keener testified that on the following Tuesday the appellant came to the garage three times. On the second visit, the two partners again commenced to argue. Keener instructed his wife to go across the street and call the sheriff to settle the dispute. When she returned, the appellant had gone but returned within fifteen or twenty minutes. She testified that:

"Well, I heard footsteps, and I looked up. I said to Sam, 'He's back,' and he said—Sam got up to go to the door, and when he got up, I did too, so he stepped up to the door, and Bill had this pistol and he whipped it up; he aimed it and I said, 'Bill, go on; don't have any trouble.' Sam said, 'See, I told you he had a gun.' I said, 'Yes, I see he has now,' so I stepped in front of Sam and told Bill then, 'You'll have to kill me first.' He fired a shot; it went into the side of the partition, and Sam said, 'I'm going to the house and get my rifle now.' Sam went to the house, and Bill pointed the gun again, and I don't know; I guess I went toward him. I don't remember; the next thing I knew I was trying to get up off the ground."

Two other witnesses were called for the state and testified that they had seen the appellant fire one shot from a pistol, turn and hit Ann Keener on the head with the weapon, and run across the street. They heard a shot and then saw Keener fall.

Bill Germany testified that he was city marshal of Van Horn and was on his regular patrol on the day of the homicide, when he saw a man lying on the side of the road. He stopped and went to the man, whom he recognized as Sam Keener. He then observed the appellant crossing the street and carrying a rifle. He asked him if he had done "this," and the appellant answered, "Yes, I shot him."

Thad Williams testified that on the day of the homicide he was working in the appellant's auto parts store. As to the homicide, he testified:

"* * * I heard someone running and Bill ran in the door and ran up against the counter, threw his hands up against the counter, and stopped himself, and I turned and looked across the street at the garage, and I believe that I said, 'Bill, what have you done now,' and when I saw Sam's wife laying on the ground and then asked Bill what he did, and I kept watching the garage and saw Sam come out of his house with his rifle and I guess took six or seven steps out and I heard a shot back to my left and saw Sam fall and I looked back and saw through the east door Bill walk out across the paved part of the front there and walk on across the street."

The appellant was the only witness in his behalf. He testified that he had carried a .22 caliber pistol since the deceased had threatened his life on Saturday. The last visit to the garage on Tuesday had been to get his money. He testified that he feared for his life, but needed the money, and so had gone armed. When he got there he asked for his money, but was cursed by the deceased. He testified that the deceased then "ran his hand inside his shirt" and that he (the appellant) pulled his pistol and fired once, "because I thought he was fixing to shoot me." After the first shot, he related, the pistol jammed and he turned and ran. He hit the deceased's wife on the side of the head because he thought she was trying to hold him, and then ran across the street and got the rifle he kept in the parts store. He then went outside the parts building and stood in front where he could have a clear view. The rifle was loaded and ready to fire. He saw the deceased come out of the garage, he related, and "I thought he was headed for me * * * to shoot me." He fired once and the deceased dropped.

On cross-examination, the appellant admitted that he would have killed Keener with his pistol if it had not jammed.

Appellant's appeal is predicated upon four formal bills of exception, which will be discussed in the order presented.

The first formal bill of exception complains of Officer Germany's testimony concerning the condition of the deceased's gun. He stated that he found two live shells on the ground near the deceased. The rifle lay nearby, with its breech open and two live shells in the magazine but none in the barrel.

Appellant objected to this testimony because he had no way of knowing the condition of the deceased's rifle at the time of the homicide. We fail to see how this testimony harmed the appellant, since it showed the deceased's gun to be in working order, with two live shells in the magazine and the breech in such position as to indicate that one of the cartridges was about to be placed in the barrel. Additionally, since counsel for the appellant adduced the same testimony upon cross-examination of the witness, he is in no position to complain of the witness's testimony. Ramirez v. State, Tex.Cr.App., 335 S.W.2d 228.

Formal bill of exception #2 complains of the court's action in giving a charge upon provoking the difficulty. At the trial, appellant objected that this was not supported by the evidence, unduly limited his right of self-defense, and constituted a comment on the weight of the evidence.

In his brief, the appellant attacks only the sufficiency of the evidence to justify the charge. He relies upon Wampler v. State, 155 Tex.Cr.R. 327, 234 S.W.2d 1009. That was a circumstantial-evidence case, with the only testimony to support the charge coming from a waitress who, along with the deceased, heard a "racket" beside the cafe, which prompted the deceased to go outside where the homicide occurred. This is not such a case. Here, we have direct evidence that the appellant went to the garage armed, fired a wild shot, and when his pistol jammed, ran to rearm himself, hitting the deceased's wife on the way out, and, having obtained another weapon, waited for the deceased to follow.

"* * * In every case where the acts and conduct of the accused were the cause of an attack upon him, the question of whether they were reasonably calculated to provoke the difficulty are questions of fact for the determination of the jury under appropriate instructions from the court." Norwood v. State, 135 Tex.Cr.R. 406, 120 S.W. 2d 806, 809.

We find the facts before us, here, demand the giving of such a charge when compared with the facts in Muckleroy v. State, 165 Tex.Cr.R. 629, 310 S.W.2d 315, where this court held the giving of the charge not to be error.

As set out in the third formal bill of exception, appellant's primary point for reversal is the court's failure to charge on abandonment of the difficulty. Having charged on provoking the difficulty, the court must charge on abandonment of the difficulty only if there is evidence to support such a charge. 4 Branch's Ann.P.C.2d, Sec. 2144, pp. 477–478; 31 Tex.Jur.2d, Instructions, Sec. 6, pp. 514–515.

The appellant's testimony was that he acted in self-defense, not that he abandoned a difficulty he testified he did not provoke.

The court, having presented the charge on provoking the difficulty in both an affirmative and a negative fashion and having charged on self-defense, did all that he was required to do under the evidence. Edwards v. State, 60 Tex.Cr.R. 323, 131 S.W. 1078; Mason v. State, 88 Tex.Cr.R. 642, 228 S.W. 952.

This charge was properly refused on other grounds. Here we have a continuous action, occurring within a short time period.

"The authorities lay down the proposition that the abandonment of the difficulty by the defendant does not arise where the difficulty was continuous, the only change being in the position of the parties

during the progress of the encounter." Campbell v. State, 84 Tex.Cr.R. 89, 206 S.W. 348.

■ Also, it is necessary that the intention to abandon the difficulty be, in some manner, communicated by the appellant so as " * * * to advise his adversary that his danger had passed, and make his conduct thereafter the pursuit of vengeance rather than measures to repel the original assault. * * *" Kelly v. State, 68 Tex. Cr.R. 317, 151 S.W. 304, 311. This was not done here. See: 29 Tex.Jur.2d, Homicide, Sec. 49, p. 33.

■ The cases relied upon by appellant for reversal: Harper v. State, 144 Tex.Cr. R. 385, 162 S.W.2d 971, Ware v. State, 68 Tex.Cr.R. 376, 152 S.W. 1074, and Edwards v. State, 60 Tex.Cr.R. 323, 131 S.W. 1078, are authorities for the proposition set out in 4 Branch's Ann.P.C.2d, Sec. 2144, at page 478:

> "If there is evidence which raises the issue of abandonment of the difficulty on the part of defendant and renewal thereof by his adversary, the court should charge on such issue."

Here, the evidence does not raise the issue and no error is presented.

■ The last bill of exception concerns the court's failure to charge on the appellant's right to arm himself and go on the premises for a lawful purpose. The court qualified the bill to show that at no time did the appellant object to such omission in the charge, nor was such a charge requested by the appellant. There was no exception to the court's qualification of the bill; therefore, appellant is in no position to complain on appeal. Nava v. State, Tex.Cr.App., 340 S.W.2d 955; Kogan v. State, Tex.Cr. App., 341 S.W.2d 925.

We have carefully reviewed the informal bills of exception, and find no error.

The evidence being sufficient, the judgment is affirmed.