**Christopher Edward JUAREZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–95–01018–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 7, 1997.

Discretionary Review Refused
March 25, 1998.

Laura L. Elizadle, Houston, for Appellant.

John B. Holmes, Carol M. Cameron, Houston, for Appellee.

Before COHEN, O'CONNOR and TAFT, JJ.

COHEN, Justice.

A jury found appellant guilty of murder and assessed punishment at 75 years imprisonment. We affirm.

## FACTS

Appellant belonged to a gang. Manuel Molina, the victim, belonged to a rival gang. Angelica Espinosa testified she accompanied appellant and his two co-defendants, Jorge Castillo and Mark Soliz, to a party the evening of the murder. Espinosa testified these three boys had talked before the party that same day about "getting" Molina's gang. Appellant denied making this statement. Espinosa said appellant, Soliz, and Castillo, carrying a shotgun, left the party together. Espinosa testified the three boys returned in about 30 minutes and appeared "jumpy." The boys left the party soon afterwards.

Appellant admitted he, Castillo, and Soliz went riding in Castillo's car after leaving the party. In a written statement, appellant admitted he brought a .38 caliber pistol and Soliz brought a shotgun. At trial, appellant claimed he carried his pistol with him that evening merely for protection. In the statement, appellant stated he and his friends were looking for some individuals, evidently including Molina, who had shot at them the night before. Appellant and his friends found Molina's mother's house, but did not see the individuals. Appellant admitted he and Soliz shot at the house and a car in front of it with his pistol and the shotgun. At trial, appellant maintained only Soliz did the shooting. Appellant testified he and his friends were trying to vandalize only the car, not the house. Appellant also admitted he knew the house was occupied and someone could have been hurt by the shooting. Molina's family was in the house when it was shot. Appellant admitted no one threatened him or his friends at the time they did the drive-by shooting. Police found shotgun slug holes in the house.

Daniel Zamora, a member of Molina's gang, said he and another gang member, Felipe DeLeon, were passengers in Molina's car the night of the shooting. Molina and his two friends happened to be around the corner from Molina's mother's house when appellant and his friends shot at it. Zamora, Molina, and DeLeon heard the gunshots. Zamora assumed there was a gang-related drive-by shooting at Molina's mother's house. Zamora and his friends saw Castillo's car fleeing, and they chased it. Zamora noted someone in Castillo's car was wearing rival gang colors. DeLeon testified he saw Soliz and Castillo in the car. Zamora and DeLeon testified neither they nor Molina had weapons when they drove after Castillo's car. Zamora explained they intended to fist fight the rival gang members when they caught up with them. DeLeon stated he and his friends chased Castillo's car to see who was in it. DeLeon said Castillo's car began slowing down as if for Molina's car to catch up, so Molina pulled his car alongside. Zamora said that, when the cars were side by side, he leaned out the window. One shotgun blast,

followed by two pistol shots, was fired from Castillo's car. DeLeon testified Soliz ducked down after he fired the shotgun at Molina's car. A witness for the State confirmed Molina died from a .38 caliber bullet wound to his head.

DeLeon testified that, once the cars were side by side, Castillo did not brake or turn down another street to get away, even though there were streets onto which he could have turned. Appellant confirmed Castillo did not turn down side streets or go to a nearby police station during the chase.

Appellant concurred that, as he and his friends were fleeing, they were pursued by Molina and his friends in Molina's car. Appellant explained Castillo's car slowed down probably only to avoid a wreck or for Castillo to see where he was going. Appellant stated Molina then pulled alongside Castillo's car. Appellant said he presumed Molina and his friends would shoot. Appellant admitted he did not see anyone in Molina's car with a gun, although it was hard to see. Appellant heard a shot, after which the rear window of Castillo's car shattered. Appellant said his friend was shouting, "They're shooting!" At trial, appellant claimed he assumed at the time this first shot had come from Molina's car. However, appellant admitted (1) there were three shots fired in all, and (2) he shot twice with his pistol, while Soliz shot once with his shotgun. Appellant claimed he shot because he feared for his and his friends' life. Appellant admitted his gun was not accidentally discharged, that he intentionally pulled the trigger, and that he knew what he was doing. However, appellant claimed he pointed his gun downwards, not straight at the people in Molina's car, as he shot.

As appellant and his friends were driving away, they passed two Texas Alcoholic Beverage Commission (TABC) officers in an unmarked car. The TABC officers testified they pursued the car, which was speeding and driving erratically. The three boys did not stop in response to the officers' siren and lights. The TABC officers pursued the three boys to the apartment complex in which the party was being held. The TABC officers found shotgun shells and a .38 caliber bullet in the car, which the boys had abandoned after pulling into the complex.

The TABC officers contacted the police, who came to the apartments. The police officers testified a .38 caliber gun, the same caliber gun used by appellant, was found in the apartment complex into which appellant, Castillo, and Soliz had fled. Appellant admitted he had thrown his gun there.

The police did not find appellant at the party, so they visited appellant's apartment. They found shotgun shells matching those inside Castillo's car. Appellant was arrested in his apartment the next day.

The State offered testimony the driver's side, back window of Castillo's car was broken out. There was glass inside Castillo's car. An expert for the State testified this type of glass could fall inside the car even if shattered by a bullet fired from the car's interior. The State offered evidence .38 caliber cartridges and a shotgun shell were found in Castillo's car. A State's expert testified there were no in-going bullet holes in Castillo's car. There was testimony Castillo's car and window were damaged from a gun blast from the interior, that is, from outgoing bullets.

There was testimony Molina's car was damaged from a shotgun blast. There were no weapons found in Molina's car. The State's witnesses confirmed no weapons appeared to have been fired from Molina's car.

A State's expert testified appellant's pistol was tested for trigger malfunction, and there was none. Appellant admitted his gun was not accidentally discharged. The expert stated the .38 caliber pistol found at the apartments was the one used to shoot the bullets found in the victim and his car.

The jury was instructed on murder and voluntary manslaughter, but not, as requested by appellant, on involuntary manslaughter. The jury was instructed on self-defense and defense of others. The trial judge included a qualifying instruction on the law of provoking the difficulty. The trial judge refused appellant's request for an instruction on abandoning the difficulty.

## PROVOKING THE DIFFICULTY

In point of error one, appellant complains the trial judge erred in instructing the jury, over his objection, on the law of provoking the difficulty, limiting his right to self-defense, where no evidence supported the submission. The trial judge instructed the jury on self-defense, which was limited by an instruction on the law of provoking the difficulty:

[T]he use of force by a defendant against another is not justified if the defendant provoked the other's use or attempted use of unlawful force, unless (a) the defendant abandons the encounter, or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter; and (b) the other person, nevertheless, continues or attempts to use unlawful force against the defendant.

So, in this case, if you find and believe from the evidence beyond a reasonable doubt that the defendant, Christopher Edward Juarez, immediately before the difficulty, then and there did some act, or used some language, or did both, as the case may be, with the intent on his, the defendant's, part, to produce the occasion for shooting Manuel Molina, and to bring on the difficulty with Manuel Molina, and that such words and conduct on the defendant's part, if there was such, were reasonably calculated to, and did, provoke a difficulty, and that on such account Manuel Molina attacked the defendant with deadly force, or reasonably appeared to the defendant to so attack him or to be attempting to so attack him, and that the defendant then shot Manuel Molina with a deadly weapon, namely, a firearm, in pursuance of his original design, if you find there was such, then you will find the defendant guilty.[1] On the other hand, if you find from the evidence that the acts done or language used by the defendant, if any, were not, under the circumstances, reasonably calculated or intended to provoke a difficulty or an attack by Manuel Molina upon the defendant, or if you have a reasonable doubt thereof, then in such event, the defendant's right to self-defense would in no way be abridged, impaired, or lessened, and, if you so find, or if you have a reasonable doubt thereof, you will decide the issue of self-defense in accordance with the law on that subject given in other portions of this charge, wholly disregarding and without reference to the law on the subject of provoking the difficulty.

See TEX.PENAL CODE ANN. § 9.31(b)(4) (Vernon 1994).

■■■■ Unless raised by the facts, a charge on provoking the difficulty is an unwarranted limitation on the right of self-defense and is error. *Matthews v. State*, 708 S.W.2d 835, 837 (Tex.Crim.App.1986); *Williamson v. State*, 672 S.W.2d 484, 485 (Tex.Crim.App. 1984). A charge on provoking the difficulty is properly given when (1) self-defense is an issue, (2) there are facts showing the deceased made the first attack on the defendant, and (3) the defendant did some act or used some words intended and calculated to bring on the difficulty in order to have a pretext for inflicting injury upon the deceased. *Matthews*, 708 S.W.2d at 837–838; *Gonzales v. State*, 838 S.W.2d 848, 867–868 (Tex.App.—Houston [1st Dist.] 1992, pet. dism'd). In determining whether any evidence raises the issue of provoking the difficulty, we view the evidence in the light most favorable to submitting the instruction. *Matthews*, 708 S.W.2d at 837–838; *see Norwood v. State*, 135 Tex.Crim. 406, 120 S.W.2d 806, 809 (1938). Whether the defendant's acts were actually intended to provoke the difficulty is a question of fact for the jury to decide. *Norwood*, 120 S.W.2d at 809.

---

1. This charge authorizes conviction if appellant intended to produce the occasion for killing Molina. The Court of Criminal Appeals has repeatedly authorized the use of a broader charge that allows conviction if the defendant merely "produced a necessity for taking the life of the deceased." *See Norwood v. State*, 135 Tex.Crim. 406, 120 S.W.2d 806, 808 (1938); *Gonzales v. State*, 838 S.W.2d 848, 868 (Tex.App.—Houston [1st Dist.] 1992, pet. dism'd). The trial judge denied the State's request to use the broader *Norwood* charge. The *Norwood* charge has been cited by the Court of Criminal Appeals as a model for trial judges to follow. *See Dirck v. State*, 579 S.W.2d 198, 203–204 n. 5 (Tex.Crim. App.1979) (op. on reh'g).

■ We hold the charge on provoking the difficulty was properly given. The first *Matthews* factor (self-defense an issue) was met. Appellant testified he presumed those chasing would shoot, and that he thought the first shot came from Molina's car. Furthermore, appellant received the self-defense instruction he requested. *See Thomas v. State,* 750 S.W.2d 324, 325–326 (Tex.App.—Dallas 1988, pet. ref'd); *Torres v. State,* 722 S.W.2d 189, 191 (Tex.App.—Houston [14th Dist.] 1986, no pet.).

The second *Matthews* factor (deceased attacked appellant first) was satisfied. Molina and his friends began the chase and pulled alongside Castillo's car. Appellant testified he presumed those giving chase would shoot. Appellant also said he thought the first shot came from Molina's car. This is some evidence that Molina and his friends made the first attack.

■ The third *Matthews* factor (provocation) was satisfied. There was testimony Molina and others had shot at appellant's gang the night before. There was testimony appellant and his friends said they would "get" those responsible. The gangs were rivals. Appellant and his friends left armed for the drive-by. There was evidence appellant and Soliz shot at Molina's family's house and a car in front of it. Appellant admitted he knew Molina's family's house was occupied and someone could have been hurt by the shooting.[2] There was evidence Castillo's car slowed down as if to allow Molina's car to catch up.

This evidence sufficiently raised a fact issue about appellant's intent to use the drive-by shooting as a pretext for drawing a rival gang member into a scuffle and shooting him. The instruction was properly submitted to the jury. *See Garcia v. State,* 522 S.W.2d 203, 206 (Tex.Crim.App.1975).

We overrule point of error one.

## ABANDONMENT OF THE DIFFICULTY

In point of error two, appellant claims the trial judge erred by refusing his request for a jury instruction on abandonment, as an exception to the provoking the difficulty limitation on self-defense. The jury charge set out the law of provoking the difficulty, which included in its abstract discussion the abandonment exception. The abandonment instruction was not included in the charge's application paragraphs.

■ Having charged on a defendant's provoking the difficulty, a judge must charge on the defendant's abandonment of the difficulty only if there is evidence supporting the charge. *Ervin v. State,* 367 S.W.2d 680, 683 (Tex.Crim.App.1963). That is, there must be evidence (1) the difficulty was not continuous and (2) the defendant somehow communicated to his adversary his intent to abandon the difficulty. *See Ervin,* 367 S.W.2d at 683–684; *Cole v. State,* 923 S.W.2d 749, 753 (Tex. App.—Tyler 1996, no pet.). The defendant must communicate his intention to abandon the difficulty in such a way that his adversary understands it. *McElroy v. State,* 455 S.W.2d 223, 226 (Tex.Crim.App.1970); *Cole,* 923 S.W.2d at 753. A defendant does not abandon the difficulty he provoked where the difficulty is continuous, the only change being in the parties' position during the encounter's progress. *Ervin,* 367 S.W.2d at 683–684.

■ Appellant fled immediately after shooting up Molina's house. Molina immediately gave chase. The drive-by shooting and the flight were a continuous "difficulty." The confrontation that began immediately upon appellant's act of shooting up the house never ceased before appellant killed Molina. Moreover, appellant never communicated to Molina his intent to abandon the difficulty. We hold that appellant failed to meet either of the two requirements for an abandonment instruction. Consequently, the trial judge correctly refused the instruction. *See Ervin,* 367 S.W.2d at 683–84.

We overrule point of error two.

## CHARGE ON INVOLUNTARY MANSLAUGHTER

In point of error three, appellant complains the trial judge should have instructed

---

2. Provocation of the victim may be by the defendant's threats directed at a third person, such as a family member. *See Bennett v. State,* 726 S.W.2d 32, 36 n. 3 (Tex.Crim.App.1986); *Nor-* wood, 120 S.W.2d at 808–809; *Thomas v. State,* 750 S.W.2d 324, 326 (Tex.App.—Dallas 1988, pet. ref'd).

the jury on the lesser included offense of involuntary manslaughter. The jury was instructed on murder and voluntary manslaughter, but not, as requested by appellant, on involuntary manslaughter.[3]

Involuntary manslaughter is a lesser included offense of murder. *Adanandus v. State*, 866 S.W.2d 210, 232 n. 21 (Tex. Crim.App.1993). The trial judge must charge on a lesser included offense if any evidence, regardless of its strength or source, exists which would permit a jury rationally to find that, if a defendant is guilty, he is guilty only of that lesser included offense. *Rousseau v. State*, 855 S.W.2d 666, 672–673 (Tex. Crim.App.1993). This means there had to be some evidence appellant caused Molina's death recklessly,[4] but not intentionally. *Adanandus*, 866 S.W.2d at 232.

Appellant testified in pertinent part as follows:

Q [State]: And you would agree with me, sir, that if you go ahead and point a gun at a human being and pull back that trigger, that that's an act clearly dangerous to human life, isn't it?

A [appellant]: Yes, ma'am.

Q: And you certainly are not telling the ladies and gentlemen of the jury that when you pulled that particular trigger, it was an accidental discharge now, was it?

A: No, ma'am, it wasn't accidental.

Q: So you intentionally pulled the trigger, right?

A: Yes, ma'am.

Q: And you knew that there were people inside the vehicle that was driving next to you, right?

A: Yes, ma'am.

Q: And you knew that if you pointed a gun at people and that person was struck,

then that person could have been killed? You knew that, didn't you?

A: Yes, ma'am, but I didn't point straight towards them . . .

Q: So pow, pow, in the direction of the complaining witness' [Molina's] car, where you knew there to be human beings?

A: Yes, ma'am, but I had it like this (indicating). I had it like down.

Q: And you had to intentionally pull that trigger now, didn't you?

A: Yes, ma'am.

This is insufficient to show that appellant was guilty only of involuntary manslaughter. Assuming this is evidence of reckless conduct, as required for the lesser offense of involuntary manslaughter, appellant was still guilty of murder under TEX.PENAL CODE ANN. § 19.02(b)(2) (Vernon 1994), which provides: "A person commits an offense if he . . . intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual . . ."

Appellant's testimony, that he intentionally fired at a car he knew was occupied although not pointing the gun "straight towards them," is certainly not evidence that he did not intend to cause serious bodily injury. Rather, it is evidence he intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused Molina's death. That is murder, under section 19.02(b)(2); thus, appellant's testimony does not show that he was guilty only of involuntary manslaughter.

Point of error three is overruled.

## LEGAL AND FACTUAL INSUFFICIENCY

In points of error four and five, appellant complains the evidence was legally and factually insufficient to support his murder convic-

---

3. At the time of appellant's offense, the Penal Code provided for the offense of involuntary manslaughter. *See* Act of June 14, 1973, 63rd Leg., R.S., ch. 426, art. 2, § 1, 1973 Tex.Gen. Laws 1122, 1124 (amended 1993) (current version at TEX.PENAL CODE ANN. § 19.04(a) (Vernon 1994)). The same offense has been recodified and labeled as manslaughter. *See* TEX.PENAL CODE ANN. § 19.04(a) (Vernon 1994).

4. A person commits involuntary manslaughter if he recklessly causes the death of another. Act of June 14, 1973, 63rd Leg., R.S., ch. 426, art. 2, § 1, 1973 Tex.Gen.Laws 1122, 1124 (amended 1993). A person acts recklessly if he is aware of or consciously disregards a substantial and unjustifiable risk. TEX.PENAL CODE ANN. § 6.03(c) (Vernon 1994).

tion, in that the State did not rebut his self-defense claim beyond a reasonable doubt.

 The State has the burden of persuasion in disproving evidence of self-defense. *Saxton v. State*, 804 S.W.2d 910, 913 (Tex.Crim.App.1991); *Wilkerson v. State*, 920 S.W.2d 404, 406 (Tex.App.—Houston [1st Dist.] 1996, no pet.). This is not a burden of production, i.e., one which requires the State affirmatively to produce evidence refuting the self-defense claim. Rather, it is a burden requiring the State to prove its case beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 913–914; *Wilkerson*, 920 S.W.2d at 406.[5]

For legal sufficiency, we view the evidence in the light most favorable to the verdict to see if any rational trier of fact could have found (1) the essential elements of murder beyond a reasonable doubt and (2) against appellant on the self-defense issue beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Saxton*, 804 S.W.2d at 914. The evidence detailed above, when viewed in the light most favorable to the verdict, is sufficient for a rational trier of fact to disbelieve appellant's self-defense testimony and to find beyond a reasonable doubt appellant committed murder.

For factual sufficiency, we follow the standard of review and burden of proof set out in *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim.App.1996). Upon reviewing the entire record, as detailed above, we cannot say the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. *See Clewis*, 922 S.W.2d at 129; *Peoples v. State*, 928 S.W.2d 112, 118 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd).

We overrule points of error four and five.

The judgment is affirmed.

---

5.  The State's burden of proof with respect to a self-defense claim, announced in *Saxton*, applies to factual and legal sufficiency reviews. *See Saxton*, 804 S.W.2d at 914 (applying rule to legal sufficiency review); *Wilkerson*, 920 S.W.2d at 406–407 (applying *Saxton* rule to factual and legal sufficiency review); *Mata v. State*, 939 S.W.2d 719, 724 (Tex.App.—Waco 1997, no pet.) (factual sufficiency review).