NO. 07-08-0353-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

OCTOBER 7, 2009
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â ______________________________

GINGER BROWN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_________________________________

FROM THE 31ST DISTRICT COURT OF LIPSCOMB COUNTY;

NO. 1152; HONORABLE STEVEN EMMERT, JUDGE
_______________________________


Before CAMPBELL and HANCOCK and PIRTLE, JJ.
MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Appellant, Ginger Sue Brown, was convicted of aggravated sexual assault of a child



and subsequently sentenced to 10 years in the Institutional Division of the Texas
Department of Criminal Justice. By two issues, appellant contends that the trial judge
committed reversible error by 1) allowing hearsay testimony of a forensic interviewer to be
admitted before the jury, and 2) refusing to admit the previously recorded statement of
appellantâs co-defendant into evidence. We affirm.
Factual and Procedural Background
Â Â Â Â Â Â Â Â Â Â On March 5, 2006, Jimmy Brown, the husband and co-defendant of appellant, was
arrested by Lipscomb County Deputy Jessica Kay for violating a protective order. While
being transported to jail, Brown began relaying information to Kay of an alleged sexual
assault of appellantâs son, Joey, that had occurred on or about March 2, 2002. After
arriving at the Lipscomb County jail, Brown gave two written statements and a video taped
statement to deputies. After receiving this information, the Lipscomb County Sheriffâs
Office dispatched another deputy, Jason McCarthy, to pick up the appellant for
questioning. Upon being brought to the jail, and after being advised of her right to remain
silent, appellant gave two written statements and a video taped statement admitting her
participation in the sexual assault. During her interviews, appellant stated that it was
Jimmyâs idea for her to have sex with her son. She further stated that Jimmy was
physically and emotionally abusive to her and the children. The statements did not,
however, contend that on the night in question that Jimmy physically forced her to have sex
with her son.
Â Â Â Â Â Â Â Â Â Â At trial, in addition to the deputies who took the statements in the case, the State
produced the testimony of Shelly Bohannon, a forensic interviewer with the Bridge
Childrenâs Advocacy Center in Amarillo. Bohannon was qualified as an expert forensic
interviewer. She testified about her interviews of Joey. It was a portion of Bohannonâs
testimony that gave rise to appellantâs first contention. 
Â Â Â Â Â Â Â Â Â Â The State also presented the testimony of the co-defendant, Jimmy, to the jury. 
Jimmy had given a number of statements to the authorities that contained inconsistencies. 
During appellantâs presentation of the evidence, Jimmy was recalled to the witness stand
and those inconsistencies were explored. At one point, appellant attempted to admit the
video taped statement given by Jimmy. From the record, it appeared that the offer was
made in an attempt to impeach Jimmyâs testimony. The trial court sustained the Stateâs
objection to the introduction of the statement. The exclusion of the video taped statement
is the basis of appellantâs second contention.
Â Â Â Â Â Â Â Â Â Â We disagree with appellantâs contentions and will affirm the judgment of the trial
court. Both of appellantâs contentions deal with the trial courtâs evidentiary rulings.
Standard of Review
Â Â Â Â Â Â Â Â Â Â We review a trial court's decision regarding the admissibility of evidence under an
abuse of discretion standard. See Cameron v. State, 241 S.W.3d 15, 19 (Tex.Crim.App.
2007). Because trial courts are in the best position to decide questions of admissibility,
appellate courts will uphold a trial court's admissibility decision when that decision is within
the zone of reasonable disagreement. Id. An appellate court may not reverse a trial
court's decision regarding the admissibility of evidence solely because the appellate court
disagrees with the decision. Id. A trial court abuses its discretion when its decision lies
outside the zone of reasonable disagreement. See Montgomery v. State, 810 S.W.2d 372,
391 (Tex.Crim.App. 1990) (op. on rehâg).
Â 
Hearsay Objection to Bohannonâs Testimony
Â Â Â Â Â Â Â Â Â Â Appellant lodged hearsay objections to much of Bohannonâs testimony. To properly
consider these objections, we must first determine whether or not Bohannon was offered
as an expert. An expert is someone whose âscientific, technical or other specialized
knowledge will assist the trier of fact to understand the evidence or to determine a fact in
issue, . . . .â See Tex. R. Evid. 702.


 The record reflects that the State spent a substantial
amount of testimonial time going over the witnessâs education, training, and experience as
a forensic interviewer. Additionally, Bohannon testified about the procedure for conducting
a valid forensic interview, especially as it related to child victims of abuse. After a hearing
outside the presence of the jury, the trial court accepted Bohannon as an expert witness
on the subject of forensic interviews. Additionally, the State had filed a notice pursuant to
the Texas Code of Criminal Procedure to allow Bohannonâs testimony to be received as
an âoutcry witness.â See Tex. Crim. Proc. Code Ann. art. 38.072 (Vernon 2005). At the
conclusion of the hearing, the record reflects that the trial court had ruled that Bohannonâs
testimony could also be received as an âoutcry witness.â Appellantâs objections as to
hearsay purport to find error with each ruling by the trial court. 
Â Â Â Â Â Â Â Â Â Â The following is the portion of Bohannonâs testimony that appellant objects to on
appeal. (All questions were by the State on direct examination.)
Q. Okay. So he said that his mom had not abused him, is that right?

Â 
A. Thatâs correct. Thatâs what he said.

Â 
Q. Okay. Did he talk about seeing the Defendantâs lingerie?

Â 
A. He talked about someâsome clothes that may have holes in them, but I
donât know if he was talking about lingerie or day wear or really what that
was.

Â 
Q. Did he ever express to you concerns that his mother would walk around
in provocative clothing?

Â 
A. No.

Â 
Q. Did he ever say he saw her in the clothing?

A. In provocative, no.



Â 
Q. Okay. Now did he discuss the role that the Co-Defendant Jimmy Brown
played?

Â 
A. In which?

Â 
Q. In the sexual assault.

Â 
A. He - - he talked about Jimmy having his mother, Joeyâs mother go and get
him out of his bed and bring him into her bedroom and place him in the bed
with her and that he sat in a chair or recliner next to the bed and just
watched.

Â 
Q. And he said he was just watching. Did he say what his mother was
doing?

Â 
A. He - - he said he couldnât remember.

Â 
Q. Did he ever give you any details as to the sexual assault by the Defendant
and the Co-Defendant against him?

Â 
A. No, he never did.

Â 
Q. Is it - - but he never specifically said about his motherâs private parts or
anything happening to him by his mother; is that correct?

Â 
A. No he denied that.

Â 
Q. Okay. Ms. Bohannon, based on your training and experience and the
number of forensic interviews that you have had with children, is it common
or uncommon for children not to disclose to you whatâs been happening?

Â 
A. We see that pretty frequently.

Â 
Q. Okay. Is it common or uncommon for children to only partially disclose?

Â 
A. We see that quite a bit too, yes.
Â 
Â Â Â Â Â Â Â Â Â Â Initially, we observe that whether or not Bohannon was an âoutcry witnessâ may be
determined by whether or not the statements made by Joey were sufficient to describe the
alleged sexual assault. See Tex. Crim. Proc. Code Ann. art. 38.072 Â§ 2. A review of the
objected to testimony would lead to the conclusion that it did not describe the assault, in
fact, Joey said he could not remember or it did not happen. See Garcia v. State, 792
S.W.2d 88, 90-91 (Tex.Crim.App. 1990) (stating that the statement to an outcry witness
must describe the alleged offense in some discernable manner as opposed to a general
allusion that something in the area or child abuse was going on). Here the child did not
give any testimony that could be viewed to sustain the requirement of the statute. 
Â Â Â Â Â Â Â Â Â Â However, this is not the end of our inquiry. The State posits that the objected to
evidence was not offered for the truth of the matters asserted, rather they were offered to
establish the underlying facts or data to support the expertâs opinion about the reluctance
of the victim to testify. In this regard it appears that the jury could use this information to
evaluate Bohannonâs testimony that child victims commonly are reluctant to disclose the
facts of the assault and, in fact, may deny or only partially disclose any information about
the event. See Rule 705(a); Austin v. State, 222 S.W.3d 801, 812 (Tex.App.âHouston [14th
Dist.] 2007, pet. refâd). Accordingly, the evidence was admissible for that purpose. 
Â Â Â Â Â Â Â Â Â Â Appellant, however, contends that, even if it was admissible for that purpose, there
was a danger that the jury would use the information for other purposes than the evaluation
of the expertâs opinion. See Rule 705(d). Our review of the record does not support
appellantâs contention. This evidence was given to explain the victimâs reluctance to
discuss the events at issue. Further, appellantâs statements admitting the sexual assault
were admitted prior to Bohannonâs testimony. Therefore, there could be little danger of the
jury using the underlying interview to convict appellant of the offense for which she had
already confessed in written and video taped statements. Finally, the record further
reflects that the victim later testified before the jury and testified to some of the events of
the assault but again stated that he could not remember some of the events. Based on
the record before us, we cannot say the trial court abused its discretion in admitting the
testimony of Bohannon. See Cameron, 241 S.W.3d at 19. Accordingly, appellantâs first
issue is overruled.
Previously Recorded Statement of Jimmy Brown
Â Â Â Â Â Â Â Â Â Â Appellant next contends that the trial court committed reversible error in refusing to
admit the previously recorded statement of Jimmy Brown into evidence. According to
appellant, the statement was admissible under the provisions of Rule 803(24) as an
admission against interest. See Rule 803(24). However, at trial appellant offered the
statement as a prior inconsistent statement. See Rule 801(e)(1)(A). As such, appellantâs
complaint on appeal does not comport with his objection at trial. See Reyna v. State, 168
S.W.3d 173, 179 (Tex.Crim.App. 2005) (an offer of evidence under one theory does not
preserve an appeal that the evidence was admissible under a different theory). 
Accordingly, nothing has been preserved for appeal. See Tex. R. App. P. 33.1(a)(1)(A). 
Therefore, appellantâs second issue is overruled.
Conclusion
Â Â Â Â Â Â Â Â Â Â Having overruled appellantâs issues, we affirm the judgment of the trial court. 
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Mackey K. Hancock

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice









Â 

Do not publish.



hide:no;
 mso-style-qformat:yes;
 mso-style-link:"Subtitle Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
p.MsoNoSpacing, li.MsoNoSpacing, div.MsoNoSpacing
 {mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraph, li.MsoListParagraph, div.MsoListParagraph
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpFirst, li.MsoListParagraphCxSpFirst, div.MsoListParagraphCxSpFirst
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpMiddle, li.MsoListParagraphCxSpMiddle, div.MsoListParagraphCxSpMiddle
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpLast, li.MsoListParagraphCxSpLast, div.MsoListParagraphCxSpLast
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoQuote, li.MsoQuote, div.MsoQuote
 {mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Quote Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:black;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoIntenseQuote, li.MsoIntenseQuote, div.MsoIntenseQuote
 {mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Intense Quote Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:.65in;
 margin-bottom:14.0pt;
 margin-left:.65in;
 line-height:115%;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD .5pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleEmphasis
 {mso-style-priority:19;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:gray;
 font-style:italic;}
span.MsoIntenseEmphasis
 {mso-style-priority:21;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleReference
 {mso-style-priority:31;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 text-decoration:underline;
 text-underline:single;}
span.MsoIntenseReference
 {mso-style-priority:32;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 letter-spacing:.25pt;
 font-weight:bold;
 text-decoration:underline;
 text-underline:single;}
span.MsoBookTitle
 {mso-style-priority:33;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 letter-spacing:.25pt;
 font-weight:bold;}
p.MsoTocHeading, li.MsoTocHeading, div.MsoTocHeading
 {mso-style-noshow:yes;
 mso-style-priority:39;
 mso-style-qformat:yes;
 mso-style-parent:"Heading 1";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.Heading1Char
 {mso-style-name:"Heading 1 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 1";
 mso-ansi-font-size:14.0pt;
 mso-bidi-font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 font-weight:bold;}
span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 font-family:"Calibri","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:10.0pt;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-09-0391.cr%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-09-0391.cr%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-09-0391.cr%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-09-0391.cr%20opinion_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-09-0391.cr%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
 /* List Definitions */
 @list l0
 {mso-list-id:1404647097;
 mso-list-type:hybrid;
 mso-list-template-ids:-1580568620 -1846378544 67698713 67698715 67698703 67698713 67698715 67698703 67698713 67698715;}
@list l0:level1
 {mso-level-number-format:alpha-lower;
 mso-level-text:"\(%1\)";
 mso-level-tab-stop:none;
 mso-level-number-position:left;
 text-indent:-.25in;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;}
ol
 {margin-bottom:0in;}
ul
 {margin-bottom:0in;}
-->








NO. 07-09-00391-CR

Â 

IN THE COURT OF APPEALS

Â 

FOR THE
SEVENTH DISTRICT OF TEXAS

Â 

AT
AMARILLO

Â 

PANEL B

Â 



OCTOBER
15, 2010

Â 



Â 

ANTHONY C. PARSON, APPELLANT

Â 

v.

Â 

THE STATE OF TEXAS, APPELLEE 



Â 



Â 

 FROM THE 364TH DISTRICT COURT OF LUBBOCK
COUNTY;

Â 

NO. 2009-423,019; HONORABLE BRADLEY S. UNDERWOOD, JUDGE



Â 



Â 

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

Â 

Â 

MEMORANDUM OPINION

Â 

Appellant, Anthony C. Parson, was
convicted of attempted[1]
burglary of a habitation with intent to commit murder or aggravated assault.[2]Â  The indictment included punishment enhancment
allegations of two prior felony convictions.[3]Â  At the punishment hearing, appellant pleaded
true to the enhancement allegations in the indictment and the jury assessed
appellantÂs punishment at confinement in the Institutional Division of the
Texas Department of Criminal Justice for 50 years.Â  Appellant subsequently filed this appeal
contending that the evidence was legally insufficient to support the conviction
and that the trial court had committed reversible error in allowing the State
to introduce evidence of an extraneous offense.Â 
We will affirm the conviction.

Factual and Procedural Background

Appellant and Kathleen McCullough,
the victim, had previously had a dating relationship.Â  Appellant and McCullough had broken up before
the events of October 10, 2008.Â  Earlier
in the day on October 10, before the events that resulted in appellantÂs
conviction, McCullough was doing her laundry at a laundromat when appellant came
in and began yelling at McCullough.Â  According
to McCulloughÂs testimony, appellant continued walking toward her and
threatening her.Â  McCullough stated she
was backing away from appellant when he grabbed her keys.Â  He then left the laundromat in the truck she
had borrowed from her brother.Â  McCullough
called a relative who came to the laundromat and took her back to her
apartment.Â  Upon arriving at her
apartment, McCullough found the front door unlocked.Â  While McCullough was trying to determine if
it was safe to go into her apartment, appellant drove up in the truck.Â  Appellant again began shouting at McCullough
and was threatening her.Â  After a short
time, appellant left the apartment complex.Â 
McCullough eventually went inside her apartment.

A few hours later (the record is not
clear as to exactly how much time passed) appellant again returned to the
apartment complex.Â  Appellant went to
McCulloughÂs apartment door and tried to gain entry.Â  Upon finding the door locked he began to beat
and kick on the door and shout threats at McCullough.Â  McCullough became afraid for her safety and
called 911.Â  While talking to the 911
operator, McCullough heard a window break, and she retreated to the
closet.Â  At some point, McCullough heard
more windows being broken and specifically heard appellant say, ÂBitch, IÂm
going to kill you.ÂÂ  

The police arrived in response to the
911 call and found appellant outside the apartment.Â  Appellant was detained and placed in the back
of Officer Travis DensonÂs police car.Â  When
appellant was placed in the rear seat of the police car, Denson activated the
video recording device and placed the camera so as to record appellant.Â  A copy of the video was played for the
jury.Â  In the video, appellant continued
to curse and threaten McCullough.Â  Upon
going back to the door of the apartment, Denson observed that the couch had
been pulled in front of the door and, upon entry, observed the broken
windows.Â  

Denson then made the decision to
arrest appellant and transport him to the City of Lubbock holding
facility.Â  During transportation to the
city holding facility, appellant continued to threaten to kill McCullough.Â  Upon arrival at the city facility, appellant
got into a fight with two other inmates.Â 
This fight was the subject matter of the extraneous offense of assault
that the trial court allowed into evidence before the jury.Â  AppellantÂs trial counsel objected to the
introduction of the extraneous offense.Â 
However, the trial court overruled the objection and allowed the
testimony before the jury.

The jury subsequently convicted
appellant as charged in the indictment and sentenced him to serve 50 years in
the ID-TDCJ.Â  Appellant appeals
contending that the evidence is legally insufficient to prove that appellant
had the requisite intent at the time of the attempted entry into the
apartment.Â  Additionally, appellant
contends that the trial court abused its discretion in allowing evidence of the
extraneous offense to come before the jury.Â 
We will affirm the judgment of the trial court.Â  

Legal Sufficiency of the Evidence

AppellantÂs first issue contends that
the evidence was legally insufficient to sustain the judgment.Â  Specifically, appellant challenges the legal
sufficiency of the evidence to prove the requisite intent of appellant at the
time of the attempted burglary.

Standard of Review

Â Â Â Â Â Â Â Â Â Â Â  A legal sufficiency review consists of reviewing the
evidence in the light most favorable to the prosecution to determine whether
any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.Â  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross
v. State, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004).Â  However, the jury is the sole judge of the
weight and credibility of the evidence.Â Â 
Clewis v. State, 922 S.W.2d 126, 132 n.10 (Tex.Crim.App. 1996)
(citing Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App.
1991)).Â  We resolve inconsistencies in
the evidence in favor of the verdict.Â  Curry
v. State, 30 S.W.3d 394, 406 (Tex.Crim.App. 2000).Â  Circumstantial evidence is as probative as
direct evidence in establishing the guilt of an actor.Â  Guevara v. State, 152 S.W.3d 45, 49
(Tex.Crim.App. 2004).Â  Furthermore, the
standard of review is the same for both direct and circumstantial
evidence.Â  Id.

Â 

Â 

Analysis

Â Â Â Â Â Â Â Â Â Â Â  In
order to convict for the offense of attempted burglary of a habitation with
intent to commit murder or aggravated assault, the State must prove that
appellant attempted to enter McCulloughÂs habitation without her effective
consent with the intent to commit the offense of murder or aggravated
assault.Â  There is no argument from
appellant regarding the elements of attempt, consent, or habitation.Â  Appellant specifically argues that there is
legally insufficient evidence of his intent to commit murder or aggravated
assault.Â  Accordingly, our analysis will
be confined to that area of the evidence.

Â Â Â Â Â Â Â Â Â Â Â  When
considering the question of intent to commit the act charged, we must first
realize that a personÂs intent is within his own mind.Â  See Norwood v. State, 135
Tex.Crim. 406, 120 S.W.2d 806, 809 (1938).Â 
Next, in an effort to ascertain intent, we may look to the outward
expression of that intent through the words, acts, and conduct of the
individual in question.Â  Id.Â  Finally, it is from all of these circumstances
that we determine his intent.Â  See
Smith v. State, 965 S.W.2d 509, 518 (Tex.Crim.App. 1998) (citing Gray
v. State, 55 Tex.Crim. 90, 114 S.W.635, 645-46 (1908)).Â  

Â Â Â Â Â Â Â Â Â Â Â  When
these considerations are applied to the facts of this case, we find that the record
reveals: 1) appellant accosted McCullough on two occasions on the day in
question; 2) each time appellant approached McCullough, he did so in a
threatening manner stating it was his intent to harm or kill her; 3) appellant
was detained outside of McCulloughÂs apartment while shouting threats; 4) the
windows had been broken out of McCulloughÂs apartment, and entry had been
attempted by kicking the door in; 5) McCullough recognized appellant as the one
attempting to get in the apartment; 6) after appellantÂs arrest, he continued
to make threats to kill McCullough.Â  In
short, from the observation of appellantÂs conduct and speech, a rational jury
could have concluded beyond a reasonable doubt that appellant intended to kill
or seriously injure McCullough.Â  See
Jackson, 443 U.S. at 319; Ross, 133 S.W.3d at 620.Â  Therefore, the evidence was legally
sufficient.Â  See Jackson,
443 U.S. at 319; Ross, 133 S.W.3d at 620.Â  AppellantÂs first issue is overruled.

Extraneous Offense

Â Â Â Â Â Â Â Â Â Â Â  AppellantÂs
last issue deals with the trial courtÂs admission of extraneous offense
testimony.Â  The trial court permitted the
StateÂs attorney to ask Denson if appellant had assaulted two other inmates
upon arrival at the City of Lubbock holding facility. Â Appellant contends that the admission of the
evidence was an abuse of discretion because such testimony was not relevant,
and even if relevant, its probative value was clearly outweighed by its
prejudicial impact.Â  

Standard of Review

Â Â Â Â Â Â Â Â Â Â Â  We
review a trial courtÂs decision to admit or exclude evidence under an abuse of
discretion standard.Â  See McCarty
v. State, 257 S.W.3d 238, 239 (Tex.Crim.App. 2009).Â  A trial court abuses its discretion when the
decision to admit the evidence in question lies outside the zone of reasonable
disagreement.Â  Id.Â  

Law of Extraneous Offenses

Â Â Â Â Â Â Â Â Â Â Â  As
a legal maxim, extraneous offenses are not admissible during a criminal trial,
especially to prove the character of a defendant and that the defendant acted
in conformity with that character trait at the time in question.Â  See Tex.
R. Evid. 404(b).[4]Â  There are exceptions to this general
prohibition.Â  Specifically, extraneous
offense evidence is admissible if it tends to prove or disprove an element of
the offense.Â  See De La Paz v.
State, 279 S.W.3d 336, 343 (Tex.Crim.App. 2009).Â  This is the inquiry into the relevance of the
evidence.Â  See Rule 404(b); De
La Paz, 279 S.W.3d at 343.Â  The
proponent for admissibility of the extraneous offense evidence must carry the
burden of establishing the admissibility of such evidence.Â  See Montgomery v. State, 810
S.W.2d 372, 387 (Tex.Crim.App. 1991) (op. on rehÂg).Â  Once the relevance is established, the
evidence may still be excluded if its probative value is substantially
outweighed by its unfair prejudicial effect.Â 
Rule 403; Santellan v. State, 939 S.W.2d 155, 169 (Tex.Crim.App.
1997).Â  

Â Â Â Â Â Â Â Â Â Â Â  If
a rule 403 objection is made, the trial judge must then conduct a balancing
test to ascertain whether or not the probative value is substantially
outweighed by the prejudicial impact of the proffered extraneous offense.Â  Id.Â 
In conducting this balancing test the trial court considers the
following: 1) how compellingly the extraneous offense evidence serves to make
the fact of consequence more or less probable; 2) the potential for this
evidence to impress the jury in some irrational but indelible way; 3) the time
required to develop the evidence; and 4) the force of the proponentÂs need for
the evidence. Id.Â  

Â 

Analysis 

Â Â Â Â Â Â Â Â Â Â Â  Our
first inquiry is whether or not the proffered extraneous evidence is
relevant.Â  Rule 404(b); De La Paz,
279 S.W.3d at 343.Â  A review of the
record reflects that the State had a substantial amount of evidence that bore
upon the intent of appellant to murder or assault McCullough at the time he
attempted the unauthorized entry into the apartment.Â  Further, the quality of the evidence in
demonstrating the intent of appellant was much more direct and persuasive than
evidence of assaults involving strangers at some time removed from the events
that led to appellantÂs arrest.Â  A
further review of the closing arguments reveals that even the proponent of the
evidence must have thought that it was not particularly important, for it is
barely even mentioned during those arguments.Â 
What was the relevance of this evidence, especially in light of the
entire record?Â  Our review yields the
conclusion that this extraneous offense evidence was only minimally
relevant.Â  For purposes of this opinion,
we will treat the evidence as relevant, as it did have some propensity to prove
the element of intent.Â  See De
La Paz, 279 S.W.3d at 343.

Â Â Â Â Â Â Â Â Â Â Â  Therefore,
we now turn to the balancing test pursuant to rule 403.Â  Santellan, 939 S.W.2d at 169.Â  Our first inquiry into the strength of the
evidence results in a determination that the evidence in question, a subsequent
assault of other inmates at a time after the offense being considered, is only
minimally compelling.Â  See id.Â  In addition, we find the force of the StateÂs
need for this evidence to be barely above negligible.Â  See id.Â  The presentation of the evidence required
only a minimal amount of time, and, to that extent, did not detract the jury
from the real issues at hand.Â  See
id.Â  However, when you review the
entire record, the most that can be said for this extraneous offense evidence
is that it proved appellantÂs propensity to be aggressive and perpetrate
assaults.Â  Thus, it did have the
potential for impressing the jury in an irrational but indelible way.Â  See id.Â  As such, this evidence should not have been
placed before the jury and to do so was error.Â 
Rule 403.Â  

However, our finding that the
admission of the evidence was error does not end the inquiry.Â  Rather, we must continue the inquiry to determine
whether the admission had an effect on appellantÂs substantial rights by a Rule
44.2(b) harm analysis for non-constitutional errors.Â  See Tex.
R. App. P. 44.2(b);[5]
Haley v. State, 173 S.W.3d 510, 518 (Tex.Crim.App. 2005).Â  A substantial right is implicated when the
error had a substantial and injurious effect on the juryÂs verdict.Â  Haley, 173 S.W.3d at 518.Â  In order to ascertain the effect the error
may have had on the juryÂs verdict, we are directed to consider everything in
the record, including all of the evidence received by the jury and how the
alleged error might be considered in connection with other evidence supporting
the verdict.Â  See id.

When we apply the analysis required
to the facts of this case, we find that we have a significant amount of
evidence that went to the issue of appellantÂs intent.Â  Further, the proponent of the evidence in
question mentioned the objected-to evidence only minimally during closing
arguments.Â  A complete review of the
evidence leads us to the conclusion that the error in admitting the evidence of
the assaults at the city holding facility did not affect appellantÂs
substantial rights.Â  See Rule
44.2(b).Â  Therefore, the error was
harmless.Â  See Haley, 173
S.W.3d at 518.Â  Accordingly, appellantÂs
final issue is overruled.

Conclusion

Having overruled appellantÂs issues,
we affirm the judgment of the trial court.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Mackey
K. Hancock

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Do
not publish.Â  











[1]
See
Tex. Penal Code Ann. Â§ 15.01(a)
(Vernon 2003).

Â 





[2]
See
id. Â§ 30.02(a)(1) (Vernon 2003).

Â 





[3] See id. Â§ 12.42(d) (Vernon. Supp.
2010), Â§ 30.02(d) (Vernon 2003).





[4]
Further reference to the Texas Rules of Evidence
will be by reference to ÂRule __Â or Ârule ___.Â 





[5]
Rule of Appellate Procedure 44.2 provides:

Â 

(a)Â  Constitutional Error.Â 
If the appellate record in a criminal case reveals constitutional error
that is subject to harmless error review, the court of appeals must reverse a
judgment of conviction or punishment unless the court determines beyond a
reasonable doubt that the error did not contribute to the conviction or
punishment.

Â 

(b)Â  Other Errors.Â 
Any other error, defect, irregularity, or variance that does not affect
the substantial rights must be disregarded.