IVORY CRIDDINGTON v. THE STATE.

No. 17113. Delivered November 7, 1934.
Rehearing Denied January 30, 1935.
Reported in 78 S. W. (2d) 185.

614

The opinion states the case.

*Jesse Owens,* of Vernon, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted for the offense of murder, and his punishment assessed at confinement in the State penitentiary for a term of ninety-nine years.

The facts as developed by the State, briefly stated, are as follows: On the 8th day of March, 1934, and for some time prior thereto, Amandy Jones operated a rooming house at which the deceased and his wife, together with others, had been living. The appellant was an intimate friend of Amandy Jones and contributed to her support and maintenance by furnishing her with groceries. It was the State's contention that the appellant became incensed at deceased for two reasons: First, because he felt that deceased was living there at the house with Amandy Jones without paying anything therefor, and, second, because he had also been intimate with Amandy Jones. On the day of the alleged homicide, at about 5 P. M., the appellant appeared at the home of Amandy Jones and inquired of deceased's wife where Amandy was and when told by deceased's wife that she did not know, the appellent then remarked: "Maybe she went to the oil mill with T-bone after some hulls." About that time T-bone came shoving a wheelbarrow with a sack of hulls in it which he carried to the cow lot. The appellant then inquired of deceased's wife whether her husband would feed the cow and about that time deceased (Columbus Smith) brought the cow to the lot and fed her and while engaged in feeding the cow he, deceased, and appellant engaged in a friendly conversation which lasted but a

short time. The appellant then left and about 9 or 9:30 P. M. returned to the house in company with Amandy Jones. They were engaged in an argument, the appellant saying, "There is one damned thing about it, if these niggers don't want to milk the cow, they sure don't have to," to which deceased replied, "You can give somebody the job because I have been milking the cow myself," to which appellant replied, "Amandy says her brother has been milking her," whereupon deceased replied, "Amandy could not have told you that because I have been milking the cow for over two weeks." Amandy said, "Yes, I told you that but Columbus has been milking." The appellant then said to Amandy, "Yes, I guess you want me to give you a pistol whipping because I am going to ask you something and you are going to tell me and when I come back I will have the low down on all of this mess." The appellant and Amandy then left the house but in about an hour's time they returned, accompanied by one Pat Garrett, and when they entered the house appellant said, "Sit down everybody; now, Amandy, get up and tell that negro what you told me, get up and tell that man what you told me," and when she hesitated he, the appellant, pulled her up and shoved her against the deceased's face and said, "Tell that G— d— nigger what you told me," whereupon Amandy said, "Yes, Columbus and Gertrude both were going with me. Skin, don't kill that man." At this time Pat Garrett drew a pistol, shook it at Columbus and said, "We came after the truth," and the appellant said, "Ain't you been using that woman as much as I have," to which Columbus replied, "No." The appellant then took the pistol away from Pat Garrett and said, "Give me my G— d— pistol; I am the man who came here to do this G— d— killing." When this remark was made the deceased began to back out of the front room into the room occupied by him and his wife and as he got past the door leading into his room the appellant grabbed him, and when he did so the deceased's wife grabbed the appellant, whereupon appellant said to her, "Get back, because I will set you afire," and in about five seconds thereafter the pistol was fired twice in rapid succession and appellant immediately returned to the front room bleeding and said, "I am cut nigh to death; I am cut all to pieces," and hurriedly left for the hospital. The deceased was shot twice through the head with a 44-caliber pistol. Dr. Moore testified that appellant had two serious stab and cut wounds when he arrived at the hospital, and if he, Dr. Moore, had not been at the hospital at the time that appellant would have bled to death before medical aid could have been summoned.

The officers, upon reaching the scene of the difficulty, found the deceased on the floor with a knife by his side. The appellant by his testimony made a case of killing in self-defense against an unlawful and violent attack by the deceased with a knife, resulting in the infliction of serious wounds upon him.

Upon these facts, the court charged on the law of murder with and without malice aforethought, self-defense, and upon provoking the difficulty. The appellant in due time objected to the charge of the court on provoking the difficulty on the ground that there was not sufficient evidence to authorize it. If the appellant by his own act or conduct did something with the intent to provoke a difficulty, or which was reasonably calculated to provoke the deceased into making an attack on the appellant, which he might use as a pretext in taking the life of the deceased, then he forfeited his right of self-defense. What his intentions were is concealed within his own mind and breast and can only be determined from his words, acts and conduct, and if his act and conduct was such as would reasonably lead a dispassionate mind to the conclusion that he intended to provoke a difficulty for the purpose of killing the deceased, then the testimony was sufficient to submit that issue to the jury for their determinaton, and the finding of the jury will be binding on this court. The State's testimony shows that the appellant accused the deceased of being intimate with Amandy Jones; he cursed the deceased; he took the pistol away from Pat Garrett and said, "I am the man who came here to do this G— d— killing," and when he said this the deceased began to back out of the front room into the room he and his wife occupied to which the appellant, with pistol in hand, followed and grabbed the deceased at which time the deceased stabbed him twice and the appellant shot the deceased. It appears from the testimony that the appellant assaulted the deceased with a deadly weapon, and when the deceased retreated he followed him and grabbed him, which was reasonably calculated to induce the deceased to cut or strike the appellant, and if such was the appellant's intention in order to have a predicate for the killing, then he forfeited his right to self-defense. We are therefore of the opinion that the court did not err in submitting that issue to the jury. See Coleman v. State, 91 S. W., 783; Sanders v. State, 83 S. W., 712; Gray v. State, 55 Tex. Crim. Rep., 90.

Bills of exception Nos. 1 and 2 which relate to the examination of prospective jurors seem to be without merit. Had the appellant objected to the form of the questions propounded by the district attorney to the jurors, the court, no doubt, would

have sustained the objection.

Bills of exception Nos. 4, 5 and 6 are without merit. Bill of Exception No. 7 is in question and answer form; besides, complaint is made therein of two separate and distinct errors relating to entirely different matters. Therefore, under the rules announced in the case of Newells v. State, 272 S. W., 492; Savage v. State, 272 S. W., 193, and Robbins v. State, 272 S. W., 175, the same cannot be considered by this court.

Finding no reversible error in the record, the judgment of the trial court is in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In his motion for rehearing appellant insists that we should have considered his bill of exception No. 7, calling our attention to the fact—which was overlooked originally—that the trial court had authorized the bill to be in question and answer form. The bill complains of the following questions, propounded to appellant on cross examination:

"Q. You made a stament here sometime ago that you were going to get a machine gun and clean the flats out, didn't you?

"A. No, sir.

"Mr. Owens: We object to that as being an improper question on cross-examination.

"Court: I will overrule the objection.

"Mr. Owens: To which we except.

"Q. How long have you been going with Mandy?

"A. I don't know exactly, a pretty good while.

"Q. About two or three years, haven't you?

"A. Yes, sir, I expect so.

"Q. You were going with her before her husband was killed?

"A. Yes, sir.

"Q. As a matter of fact, you pushed him out of that window down there, didn't you?

"A. I couldn't even get in the oil mill, I was at home in bed.

"Mr. Owens: We object to that as highly prejudicial; that it can not be cured, and we ask the jury not to consider the question that was asked by the District Attorney."

The court sustained the objection of appellant's counsel and

instructed the jury not to consider the last question and answer. It is appellant's position that the bill brings this case under the rule announced in Franks v. State, 68 S. W. (2d) 207. We are not inclined to that view. The first question shown by the bill was answered in the negative. This being true we are of opinion that the question in and of itself was not of such harmful character as that the mere asking of it could be held reversible error. The other inquiries shown in the bill were proper as showing appellant's relation with and attitude toward Mandy, except perhaps the last one. Other evidence in the case had shown that her husband had been killed, but the manner and place of the killing was not in evidence. It is appellant's position that the last question and answer left the impression with the jury that appellant had killed Mandy's husband by pushing him out of a window at the oil mill. We think a conclusion to that effect by this court would be unwarranted. We are not inclined to regard the incident as one which the court could not control by an instruction to the jury to disregard.

Appellant renews his contention that the evidence did not raise the issue of provoking the difficulty. With such point in mind we have again reviewed the facts. There seems no room for doubt that the State's evidence does pertinently raise the issue. The evidence is sufficiently set out in our original opinion, and a repetition of it is not deemed necessary.

The form of the charge on provoking the difficulty does not appear subject to the criticism urged. If it was thought by appellant to be in some respect inadequate the exceptions to the charge are not sufficiently specific to direct the trial judge's attention to the thing objected to. The exception follows: "If such issue (provoking the difficulty) were raised by the evidence the charge of the court is erroneous in that he does not properly submit the law covering said issue." This character of general objection falls short of complying with the provisions of article 658, C. C. P., requiring that the exceptions to the charge shall distinctly specify each ground of objection. See Gill v. State, 84 Tex. Crim. Rep. 531, 208 S. W., 926; Magana v. State, 115 Tex. Crim. Rep., 7, 26 S. W. (2d) 1072.

Believing the original opinion made proper disposition of the case, and that no reversible error is pointed out in the motion for rehearing we are constrained to overrule the motion and it is so ordered.

*Overruled.*