**Opinion filed June 19, 2014**



## In The

# Eleventh Court of Appeals

_____

## No. 11-12-00179-CR

_____

## RAUL GARCIA MIRANO, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 70th District Court**

**Ector County, Texas**

**Trial Court Cause No. A-36,379**

### M E M O R A N D U M   O P I N I O N

The jury found Raul Garcia Mirano guilty of eight offenses from a fifteen-count indictment[1]: Count Three for aggravated sexual assault of a child, N.L.; Counts Four, Six, Ten, and Eleven for indecency with a child, N.L.; Counts Twelve and Fourteen for indecency with a child, E.L.; and Count Fifteen

---

[1]The State abandoned Counts One, Two, Seven, Eight, Nine, and Thirteen prior to trial and abandoned Count Five after it rested.

for continuous sexual abuse of young children, for acts against both N.L. and E.L. The jury assessed punishment at five years' confinement for Count Three; two years' probated sentences for Counts Four, Six, Ten, Eleven, Twelve, and Fourteen; and twenty-five years' confinement for Count Fifteen. The jury assessed no fines. The court sentenced Appellant accordingly. Appellant challenges the sufficiency of the evidence on all convictions. We affirm.

## I. *The Charged Offenses*

The grand jury returned a multi-count indictment against Appellant for aggravated sexual assault of a child, namely N.L.; indecency with a child, for acts committed against both N.L. and E.L.; and continuous sexual abuse of young children, for acts committed against both N.L. and E.L.

A person commits the offense of aggravated sexual assault of a child, younger than fourteen years of age, if he intentionally or knowingly causes the penetration of the anus or sexual organ of the child by any means or causes the anus or sexual organ of the child to contact the sexual organ of another person, including the actor. TEX. PENAL CODE ANN. § 22.021 (West Supp. 2013).

A person commits the offense of indecency with a child, younger than seventeen years of age, whether the child is of the same or opposite sex, if the person engages in sexual contact with the child with the intent to gratify the sexual desire of any person. TEX. PENAL CODE ANN. § 21.11 (West 2011).

A person commits the offense of continuous sexual abuse of a child if (1) during a period that is thirty or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims, and (2) at the time of the commission of each of the acts of sexual abuse, the actor is seventeen years of age or older and the victim is a child younger than fourteen years of age. TEX. PENAL CODE ANN. § 21.02 (West Supp. 2013).

2

## II. *The Evidence at Trial*

The two victims are N.L. and E.L., granddaughters of Appellant. Their mother is C.M., who is the daughter of Appellant. C.M. is married to R.L. N.L. and E.L., who are fourteen years old and eleven years old, respectively,[2] have two sisters, B.L., seventeen years old, and O.L., nine years old, as well as three brothers, ages nineteen, twenty, and twenty-three. C.M. and R.L. lived with their four daughters in Odessa, Texas. Appellant also lived in Odessa, Texas, with his then-wife, R.B.

N.L. testified she had just finished the eighth grade at the time of trial. N.L. testified that she first recounted the abuse of Appellant to her mother, C.M., after C.M. had found her and her sister, E.L., with another neighborhood girl, Nana, playing "mommy and daddy"; C.M. had inquired if anyone had touched them inappropriately. C.M. testified that N.L. said that Appellant had touched her, as did E.L. These outcries occurred in August 2008.

N.L. said the first time she was touched inappropriately by Appellant was at Christmas, when she became upset that the Christmas card she had made for Appellant was not displayed at Appellant's house and had been replaced by an aunt's card. N.L. said she cried and went to Appellant's room where she got underneath the blankets on the bed. N.L. said she was crying and her eyes were red when Appellant entered his bedroom and asked why she was crying. N.L. said that Appellant then put his hands under the blanket and pulled down her pants and underwear. N.L. testified that, after he pulled her pants and underwear down, he touched her anus and her vagina. N.L. said that she was touched inside her vagina lips and her butt during this incident while she was lying on her stomach. N.L.

---

[2]These were their ages in June 2012 at the time of trial.

3

testified that Appellant touched the back part of her vagina and butt and slipped his finger in between her butt cheeks and the back part of her vagina. N.L. testified:

> I was laying on my stomach and he was touching my butt. And his hand went in a little bit to my anal part and he had slid his hand through there to my butt and his hand went by my vagina, but it didn't go all the way in, but it was, it kind of went into my lips where -- I guess that you would say.

N.L. said the second instance of abuse occurred just before N.L. and others were going to go to the movies, when Appellant asked her if she wanted candy or chocolates; she did and she went into his bedroom to get the candy, but Appellant instead lay down on the bed and put her on top of him facing him. N.L. testified that his privates touched hers and he moved it around but that both of them were wearing clothes at the time. N.L. testified that the third instance of abuse occurred when they were in the living room watching television when Appellant asked her to sit on his lap. She said that she sat on his lap, that she felt his private parts move against her private parts, and that it felt weird. N.L. also reported that, several times after people had left a room at Appellant's house and he was alone with her, he would touch her butt on top of her clothes. N.L. said that she felt bad about herself because of these instances; that she suffers from depression, weight loss, sleep loss, and nightmares; and that she has cut herself.

E.L. testified that she was eleven years old, had just finished the fifth grade, and was about to go into sixth grade at the time of trial. E.L. testified that Appellant had touched her on more than one occasion. E.L. said the first time was when he asked her if she wanted a massage and he took her and her sister, O.L., to his bedroom. E.L. said he touched her privates over her clothes in the bedroom while she was lying facedown on the bed. E.L. said that, during the first incident, Appellant asked her if she "liked it" when he touched her privates and that she said

4

"no." E.L. said she was scared when Appellant asked her if she liked him touching her during this first incident.

E.L. said the second instance of abuse occurred when Appellant took her to the guest room with her sister, O.L., and a cousin, Julie, and he flipped her over his shoulder and onto the bed. E.L. said Appellant touched her butt on the outside of her clothes when he flipped her over his shoulder. E.L. reported that Appellant told her not to tell anyone about the incidents of touching in the bedrooms.

O.L. stated she was present when this second incident occurred and testified Appellant had touched E.L.'s butt in the guest room. O.L. testified that Appellant flipped her and played with her, that it was fine, that she had a good time, and that it was not scary. She testified that he played with the other grandchildren too. O.L. said she was not afraid, so she had not told her mother or grandmother about playing with Appellant.

E.L. testified that the third incident occurred when Appellant was in the garage and he asked to fix her belt; he then put his hand underneath her clothes and underwear and touched her butt. Her father, R.L., saw part of the incident and confronted Appellant. R.L. testified about the incident that occurred in the garage[3] when Appellant touched E.L. on the butt. According to R.L., he asked, "[W]hat are you doing?" and Appellant claimed he was fixing E.L.'s belt. Then R.L. said, "[N]o, you weren't." R.L. said Appellant looked scared. R.B., Appellant's ex-wife, remembered that R.L. was upset about an incident in the garage and that R.L. and his wife took the children home, but R.B. did not see the incident. R.L. admitted he had a conviction for criminal mischief and two prior DWIs.

C.M. testified her daughters were playing "mommy and daddy" with another girl from the neighborhood and were kissing each other, which C.M. thought was

---

[3]R.L. also testified that, while he was at Appellant's house on another occasion, Appellant had shown him pornographic magazines while they were in the garage and that it made R.L. uncomfortable.

inappropriate; C.M. then asked her daughters if anyone had touched them inappropriately. E.L. and N.L. told her that Appellant had touched them. E.L. recounted that the first time she spoke to anyone about the abuse by Appellant was after her mother had seen her and her sisters and a friend playing a "mommy and daddy" game.

C.M. testified that the first incident N.L. described occurred at Christmas in 2007 when Appellant pulled N.L.'s pants and underwear down while she was on the bed and under the blankets in Appellant's bedroom. C.M. said the second incident described by N.L. occurred in the summer just before they went to a movie, Shrek, when Appellant offered N.L. candy that was in his bedroom. N.L. told C.M. that, once N.L. was in the bedroom, Appellant lay down on the bed; put N.L. on top of him; and, while they were both clothed, moved his privates on her privates. C.M. said the third incident N.L. recounted occurred when N.L. was in the living room and was asked to sit on Appellant's lap; when she did, Appellant moved his private part against her private part through the clothes. C.M. also described what E.L. had told her about Appellant's inappropriate actions when he touched her in his bedroom, the guest room, and the garage, all of which occurred before E.L.'s outcry to C.M. in August 2008.

Shawndee Kennedy, Program Director for Harmony Home, testified about the services that her organization provides to the community. Kennedy also testified about "grooming" and how sexual predators groom young children by befriending them, flattering them, spending time with them, and buying gifts for them. Kennedy said that the predator then engages in accidental touches to the child to desensitize the child before moving to inappropriate touching of the child's sexual organs. Kennedy also talked about "delayed outcry" by children and the five phases that children go through. Kennedy admitted that she had not met or interviewed the children in this case.

6

Nicole McLean, a former forensic interviewer for Harmony Home, testified that she interviewed E.L. McLean described what she heard from E.L. and what she observed about E.L.'s behavior and mannerisms during the interview. McLean remembered that E.L. cried during the interview and alternated between looking at her and looking away and that E.L. initially giggled when McLean mentioned body parts. McLean also interviewed N.L. the same day, and N.L. described the incidents of abuse by Appellant.

Shelly Stanford, an investigator with the Odessa Police Department, testified that the department had received a complaint from C.M. of sexual abuse of children by Appellant. Investigator Stanford testified that the children were interviewed at Harmony Home and that she reviewed the information gathered in those interviews and interviewed Appellant, who, after being read his *Miranda*[4] rights, waived them and agreed to talk to Investigator Stanford and provide her with a statement. Investigator Stanford testified she also gathered information from C.M.

Count Three alleged that Appellant, in December 2007, committed aggravated sexual assault against N.L. when he penetrated N.L.'s sexual organ with his finger. Counts Four, Six, and Ten alleged that, in June 2007 (Count Four) and August 2007 (Counts Six and Ten), Appellant, with the intent to arouse or gratify his sexual desire, committed indecency with a child, N.L., when he touched her anus with his hand. Count Eleven alleged that Appellant, in August 2007, with the intent to arouse or gratify his sexual desire, committed indecency with a child, N.L., when he touched his sexual organ to her sexual organ over clothes.

Count Twelve alleged that Appellant, in June 2007, with the intent to arouse or gratify his sexual desire, committed indecency with a child, E.L., when he touched her sexual organ with his hand over her clothes. Count Fourteen alleged

---

[4]*Miranda v. Arizona*, 384 U.S. 436 (1966).

that Appellant, in August 2007, with the intent to arouse or gratify his sexual desire, committed indecency with a child, E.L., when he touched her anus with his hand over her clothes. Count Fifteen alleged that Appellant committed two or more acts of sexual abuse—indecency with a child, namely N.L. and E.L.—when he touched their anus or sexual organ with his hand, during a period of thirty days or more, and did so with the intent to arouse or gratify his sexual desire.

### III. *Issues Presented*

Appellant has asserted two sufficiency points of error. First, Appellant complains that there was insufficient evidence to convict him as to E.L. and, second, that there was insufficient evidence to convict him as to N.L.

### IV. *Standard of Review*

We apply the sufficiency standard outlined in *Jackson* and its progeny for both of Appellant's sufficiency points. *Jackson v. Virginia*, 443 U.S. 307, 318 (1979); *Brooks v. State*, 323 S.W.3d 893, 894 (Tex. Crim. App. 2010); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We review all of the evidence introduced by both the State and Appellant in the light most favorable to the jury's verdict and decide whether any rational jury could have found each element of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319.

### V. *Discussion and Analysis*

The testimony of a child victim alone is sufficient to support a conviction for sexual assault. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a) (West Supp. 2013); *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (concluding child victim's unsophisticated terminology alone established element of penetration beyond a reasonable doubt). The trier of fact may believe all, some, or none of a witness's testimony because the factfinder is the sole judge of the weight and credibility of the witnesses. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Isham v. State*, 258 S.W.3d 244, 248 (Tex. App.—Eastland 2008, pet.

8

ref'd). We defer to the trier of fact's resolution of any conflicting inferences raised in the evidence and presume that the trier of fact resolved such conflicts in favor of the prosecution. *Jackson*, 443 U.S. at 318; *Brooks*, 323 S.W.3d at 894; *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999) (citing *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993)).

*A. Sufficiency of Evidence for Convictions as to E.L.*

Appellant asserted in his first point of error that the evidence was insufficient to convict him of the crimes alleged to have been committed by him against E.L. and that there was insufficient proof of the required culpable mental state. E.L. testified that Appellant had inappropriately touched her on three separate occasions. E.L. testified that Appellant touched her private parts over her clothes in Appellant's bedroom and asked if she "liked it," that he touched her butt in the guest bedroom after he flipped her over his shoulder, and that Appellant touched her butt inside of her underwear while they were in the garage. The jury may convict on the testimony of the victim alone. *See* CRIM. PROC. art. 38.07(a); *Villalon*, 791 S.W.2d at 134. In E.L.'s case, O.L. corroborated E.L.'s testimony about the inappropriate touching of E.L. by Appellant in his guest bedroom, and E.L.'s father, R.L., testified about what he saw in the garage. In addition, E.L.'s mother testified about E.L.'s outcry, which can be sufficient for conviction. *See Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991).

Appellant complains that his intent to sexually arouse or gratify himself was never proven, but intent can be inferred from words or deeds. "Mental culpability is of such a nature that it generally must be inferred from the circumstances under which a prohibited act or omission occurs." *Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998) (quoting *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991)). "A defendant's mental state 'was concealed within his own mind and can only be determined from his words, acts, and conduct.'" *Id.* (quoting

9

*Norwood v. State*, 120 S.W.2d 806, 809 (Tex. Crim. App. 1938)). Appellant's acts of touching E.L. over and under her clothes and asking her if she "liked it" evinced his intent to sexually arouse or gratify himself. C.M. described the time periods when these instances of abuse occurred. We hold that a rational jury could have found beyond a reasonable doubt that Appellant committed the crimes of indecency with E.L. and continuous sexual abuse of E.L. We overrule Appellant's first point of error.

*B. Sufficiency of Evidence for Convictions as to N.L.*

Appellant asserts in his second point of error that there was insufficient evidence to convict him of crimes against N.L. The jury may convict on the testimony of the victim alone. *See* CRIM. PROC. art. 38.07(a); *Villalon*, 791 S.W.2d at 134. N.L. said that Appellant had inappropriately touched her on several occasions.

N.L. said the first incident of abuse occurred at Christmas in Appellant's bedroom when he pulled her pants and underwear down and touched her butt and vagina. N.L. testified:

> I was laying on my stomach and he was touching my butt. And his hand went in a little bit to my anal part and he had slid his hand through there to my butt and his hand went by my vagina, but it didn't go all the way in, but it was, it kind of went into my lips where -- I guess that you would say.

N.L. said the second incident occurred just before they were going to go to the movies when Appellant asked her if she wanted candy and she followed him into his bedroom; Appellant, who was clothed, then lay down on the bed and put N.L., who was also clothed, on top of him and facing him. N.L. testified that his privates touched hers and that he moved his privates around. N.L. testified about a third incident in the living room when they were watching television and Appellant asked her to sit on his lap; she said that she felt his private parts move against her

10

private parts and that it felt weird. N.L. also reported that, several times after people had left a room at Appellant's house and she and Appellant were alone, Appellant touched her butt on top of her clothes. C.M. testified about when these acts of abuse occurred.

Appellant again complains that his intent to sexually arouse or gratify himself was never proven, but "[m]ental culpability is of such a nature that it generally must be inferred from the circumstances under which a prohibited act or omission occurs." *Moore*, 969 S.W.2d at 10 (quoting *Hernandez*, 819 S.W.2d at 810). "A defendant's mental state 'was concealed within his own mind and can only be determined from his words, acts, and conduct.'" *Id.* (quoting *Norwood*, 120 S.W.2d at 809). Appellant's actions in the bedroom and living room incidents, when he moved his private parts against N.L.'s private parts, demonstrated his intent to arouse or gratify his sexual desire. We hold that a rational juror could have found the evidence was sufficient to prove beyond a reasonable doubt that Appellant committed the crimes of aggravated sexual assault of N.L., indecency with N.L., and continuous sexual abuse of N.L. We overrule Appellant's second point of error.

## VI. *Conclusion*

After reviewing the record, we hold that the evidence was sufficient to convict Appellant of indecency with a child and continuous sexual abuse of a child, namely E.L. We also hold that the evidence was sufficient to convict Appellant of aggravated sexual assault of a child, indecency with a child, and continuous sexual abuse of a child, namely N.L. We overrule both of Appellant's points of error on sufficiency of the evidence.

## VII. *This Court's Ruling*

We affirm the judgment of the trial court.



MIKE WILLSON

JUSTICE


June 19, 2014

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.